UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

SHAWN MCCOY,

                                        Defendant.

---

02 Cr. 1372 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

The Court has received motions from defendant Shawn McCoy seeking his compassionate release from United States Penitentiary Yazoo City, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  McCoy makes claims based on his vulnerability to COVID-19; legal arguments pertaining to his conviction and sentence; legal arguments based on the First Step Act ("FSA"); and for other relief.  *See* Dkts. 568 ("Def. Mot."), 570 ("First Step Mot."), 588 ("Amend. Def. Mot.").  The Government opposes such relief.  Dkt. 591 ("Opp.").  For the reasons that follow, the Court denies the motions.

I.      **Background**

        A.      **McCoy's Criminal Conduct**

        McCoy was one of several members of a drug conspiracy, in connection with which he transported drugs between New York and Virginia, and drove dealers around Virginia.  *Id.* at 1. In January 2000, for example, he asked an individual to travel to Virginia to sell drugs, and in February 2000, McCoy traveled from Virginia to the Bronx to obtain cocaine that was for sale in Virginia.  PSR ¶¶ 32–33.

        In late February 2000, McCoy, his co-conspirator Larry Williams, and other conspiracy members were in Virginia, their home base.  Opp. at 1.  Williams believed that Jason Henry, one

of his dealers, had lost drugs and was unable to pay Williams the money he was owed. *Id.*; PSR ¶ 43. Following a violent scuffle, Williams shot Henry in the leg. Williams instructed McCoy to take care of Henry. Opp. at 1; PSR ¶ 43. McCoy shot Henry twice in the head, killing him, and then worked with co-conspirators to dispose of Henry's body—first placing the body in a garbage can in the backyard of an abandoned home and then, when Williams told McCoy and co-conspirators to move the body, from the backyard onto the side of a highway. Opp. at 1; PSR ¶¶ 44–45.

**B.     Relevant Procedural History**

**1.     McCoy's Indictment, Conviction, and Sentence**

On April 5, 2005, McCoy was indicted in a four-count superseding indictment, which charged: (1) conspiracy to distribute and possess with intent to distribute 50 grams or more of crack cocaine, in violation of 21 U.S.C. § 846, from at least 1998 through March 2000; (2) intentional murder while engaged in a continuing criminal enterprise, in violation of 21 U.S.C. § 848(e)(1)(A), for killing Henry in February 2000; (3) murder in the course of using and carrying a firearm, in violation of 18 U.S.C. §§ 2, 924(j), by causing Henry's death in February 2000;[1] and (4) the use, carrying, and discharging of a firearm in furtherance of a drug trafficking crime, and aiding and abetting the same, in violation of 18 U.S.C. §§ 2, 924(c)(1)(A)(iii), for carrying and discharging several firearms in connection with the narcotics conspiracy charged in Count One. Dkt. 189 ("Superseding Indictment").

On April 28, 2005, McCoy was convicted by a jury on all counts. On October 20, 2006, the Honorable Barbara S. Jones, United States District Judge, sentenced McCoy to 420 months

---

[1] The superseding indictment charged McCoy under § 924(i), the current version of which is at § 924(j). *See United States v. Parkes*, 252 F. App'x 373, 375 (2d Cir. 2007) (summary order); *see also* Opp. at 1.

imprisonment, including 300 months on Counts One through Three, running concurrently, followed by a mandatory consecutive sentence of 120 months on Count Four. Dkt. 561-1 ("Sent. Tr.") at 13. On October 27, 2006, Judge Jones amended the sentence to partially credit McCoy for time he spent in custody in state court. Dkt. 268 (judgment); First Step Mot. at 42–4 48 (amended sentencing transcript). McCoy's final sentence, on Counts One through Three, was 276 months, running concurrently, followed by the 120-month sentence on Count Four. Dkt. 268. Although the Sentencing Guidelines recommended life imprisonment—which was the maximum sentence available on each of Counts One through Three—Judge Jones varied downward significantly to reflect McCoy's "tragic family circumstances," his intelligence, his lack of premeditation, and his non-leadership role in the drug organization and murder. Sent. Tr. at 10–12. She described the sentence as "lenient," given the nature of McCoy's crimes. *Id.* at 12. As of July 21, 2022, the Bureau of Prisons ("BOP") website estimates McCoy's release date to be March 5, 2035.[2]

### 2.    McCoy's First Compassionate Release Motion

On August 28, 2020, McCoy, then represented by counsel, moved for a reduction of his sentence to a period of supervised release pursuant to 18 U.S.C. § 3582(c)(1)(A). Dkts. 559–60. McCoy argued that he suffered from health conditions—hypertension, obesity, and asthma—that put him at increased risk of dying from COVID-19. Dkt. 560 at 1, 7–9. He was then incarcerated at Federal Correctional Institution Petersburg Low. He argued that, given the "disturbingly high number of inmates" testing positive, McCoy faced imminent danger while incarcerated. *Id.* at 10.

---

[2] The Government's submission stated that his projected release date as of January 2022 was October 31, 2035. Opp. at 2.

On September 8, 2020, the Government opposed the motion. Dkt. 562. It conceded that McCoy had medical conditions putting him at higher risk for complications from COVID-19. *Id.* at 3; *see* Dkt. 582 ("2020 CR Tr.") at 11. However, it argued that § 3553(a) factors weighed against his release. According to the Government, McCoy would pose a "danger to the community" because of "the extreme seriousness of the offense conduct" as well as McCoy's "undeveloped and uncertain plan." Dkt. 562 at 10; *see* 2020 CR Tr. at 11.

On September 10, 2020, McCoy replied. Dkt. 563. He argued that he would be safer living with his wife at home than in prison, and that he had a concrete plan for re-entry into society. *Id.* at 2, 5–6. He also argued that the § 3553(a) factors favored his release, and that his sentence should be reduced because Williams—the leader of the drug conspiracy—had received a 20-year sentence, creating an unwarranted sentencing disparity between Williams and McCoy.[3] *Id.* at 7, 9–10.

On September 14, 2020, the Honorable William H. Pauley, United States District Judge, to whom McCoy's case had been reassigned following Judge Jones's retirement, denied McCoy's motion for compassionate release from the bench. 2020 CR Tr. at 20. Judge Pauley acknowledged that while "there would be a compelling reason for [McCoy's] release, given [his] multiple overlapping medical conditions," "[t]hat is just part of the analysis." *Id.* at 18. Judge Pauley, citing the § 3553(a) factors, found that, given the "heinous and frightening" nature of McCoy's crime, compassionate release would not serve various goals of sentencing, including the need for public protection; specific and general deterrence; respect for the law; and just punishment. *Id.* at 19–20. Drawing on Judge Jones's remarks at McCoy's sentencings, Judge

---

[3] As to McCoy's sentencing disparity argument, the Government argued that there was no sentencing disparity between McCoy and Williams because Williams committed a less severe crime, for which he had received the statutory maximum. 2020 CR Tr. at 12.

Pauley noted that McCoy had committed the "cold-blooded murder of a 21-year-old man," shooting him twice in the head before helping dispose of his body in a garbage can along the highway. *Id.* at 18–19. He also found that the disparity between McCoy's and Williams's sentences was justified considering the "stark differences" between the crimes. *Id.* at 19 (For Williams, "that sentence was the statutory maximum . . . and he did not kill another human being"). In sum, because "a crime of this nature is just about as severe as it could possibly get," and because Judge Jones's sentence had sought to protect the public from McCoy, Judge Pauley denied him compassionate release, which, Judge Pauley stated, "would do little to promote respect for the law or just punishment for the offense." *Id.* at 19–20.

### C.   McCoy's Instant Motions

On February 17, 2021, McCoy filed a *pro se* motion for compassionate release. Def. Mot. He argues there that release or resentencing is warranted based on (1) his constitutional right against double jeopardy; (2) the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018); (3) his lack of premeditation in committing the murder; and (4) *United States v. Holloway*, 68 F. Supp. 3d 310, 314 (E.D.N.Y. 2014). *See* Def. Mot. at 2–4. McCoy also argues that certain § 3553(a) factors favor release. He asserts that he is today not a danger to the community, and points to his family connections, education and behavior while incarcerated. *Id.* at 4–6.

On March 17, 2021, McCoy filed another *pro se* motion for a sentence reduction pursuant to the FSA. First Step Mot. McCoy reiterated his earlier arguments, adding that his sentence could be reduced under the Fair Sentencing Act, which he argues applies retroactively to his crimes via the FSA. *Id.*

On July 30, 2021, following Judge Pauley's death, McCoy's case was reassigned to this Court. Dkt. 572. On September 24, 2021, McCoy's counsel filed a motion asking to be relieved from representing him. Dkt. 580. The same day, the Court granted the motion. Dkt. 581.

On January 4, 2022, McCoy filed an amendment to his motion for release. *See* Amend. Def. Mot. There, he preserves the arguments he made in his February 2021 motion. *Id.* at 1. He adds that compassionate release is warranted because his incarceration has been more punitive than expected as a consequence of COVID-19. *Id.* He also again notes the differences between his sentence and Williams's, and cites his good behavior while incarcerated. *Id.* at 1–2.

On January 20, 2022, the Government filed a brief opposing McCoy's original and amended motions for compassionate release. Opp. It argues that McCoy failed to establish extraordinary and compelling reasons for release and that the § 3553(a) factors disfavor a sentence reduction. *See id.* at 4–7.

On March 3, 2022, McCoy filed a reply. Dkt. 595 ("Reply"). He argues that, even if the extraordinary and compelling reasons he alleges individually do not justify release, they do when viewed in combination.

## II.    Discussion

### A.    Governing Legal Principles

Under 18 U.S.C. § 3582(c)(1)(A), "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf," a court may reduce such defendant's sentence if it finds that "extraordinary and compelling circumstances warrant such a reduction," and that "such a reduction is consistent

with the applicable policy statements issued by the Sentencing Commission."[4]  The Court must

also consider the "factors set forth in section 3553(a) to the extent that they are applicable."  *Id.*

Originally, § 3582(c)(1)(A), did not permit imprisoned persons to initiate compassionate release

proceedings, and instead required the BOP to seek such release on their behalf.  *United States v.*

*Ebbers*, 432 F. Supp. 3d 421, 422–23, 427 (S.D.N.Y. 2020).  However, Congress has since

amended the law to allow defendants to seek such relief.  *Id.* at 422–23.

Congress tasked the Sentencing Commission with identifying the circumstances that are

sufficiently extraordinary and compelling to justify a reduction in sentence.  *Id.* at 427 (citing 28

U.S.C. § 994(t)).  The Commission did so in U.S.S.G. § 1B1.13 and its commentary, which, *inter*

*alia*, (1) define various circumstances that present extraordinary and compelling reasons

justifying release; and (2) require that a defendant not be a danger to the community.  *Id.*

§ 1B1.13(1)–(3) & cmt. n.1(A)–(D).  The Commission, however, has not updated that provision

to reflect the 2018 FSA's amendment to § 3582(c)(1)(A), and its guidance refers only to a

"motion of the Director of the Bureau of Prisons."  *Id.* § 1B1.13.  Accordingly, the Second

Circuit has held that U.S.S.G § 1B1.13 "is not 'applicable' to compassionate release motions

brought by defendants," rather than by the BOP, and "cannot constrain district courts' discretion

to consider whether any reasons are extraordinary and compelling" in such cases.  *United States*

*v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020); *see also id.* at 237 ("Neither Application Note

---

[4] The Government does not address the exhaustion requirement of § 3582(c)(1)(A) in its moving papers.  *See* Opp.  McCoy met the exhaustion requirement for his first compassionate release motion.  *See* Dkt. 560 at 6–7.  The Court assumes *arguendo* the same is so for the second motion, and reviews McCoy's motion on the merits.  *See United States v. Carter*, No. 18 Cr. 390 (PAE), 2020 WL 3104807, at *2 (S.D.N.Y. June 11, 2020) (declining to decide whether defendant properly exhausted administrative remedies and concluding on merits that compassionate release was not warranted); *United States v. Gomez*, No. 18 Cr. 341 (PAE), 2021 WL 3666158, at *2 (S.D.N.Y. Aug. 17, 2021) (same); *United States v. Robinson*, No. 17 Cr. 124 (PAE), 2022 WL 507445, at *2 n.1 (S.D.N.Y. Feb. 18, 2022) (same).

7

1(D), *nor anything else in the now-outdated version of Guideline § 1B1.13*, limits the district court's discretion." (emphasis added)).

Consistent with *Brooker*, when assessing a motion brought directly by an imprisoned defendant rather than by the BOP, the Court is constrained neither by U.S.S.G. § 1B1.13's enumeration of extraordinary and compelling reasons, nor by its freestanding requirement that the defendant seeking release not pose a danger to the community.  Rather, the Court may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." *Id.* at 237.  Even if such reasons are present, the Court must also assure itself that release is consistent with "the factors set forth in section 3553(a) to the extent that they are applicable."  18 U.S.C. § 3582(c)(1)(A).

### B.    Application

The Court begins with McCoy's argument for compassionate release based on COVID-19.  The Court then reviews McCoy's other arguments, including that he was charged with a lesser-included offense in violation of the constitutional prohibition on double jeopardy; that the FSA entitles him to re-sentencing; that he should have been sentenced for second-degree, not first-degree, murder; and for relief pursuant to *Holloway*.  The Court finally assesses anew the § 3553(a) factors as applied to McCoy's argument for sentencing reduction.

### 1.    COVID-19

McCoy argues that COVID-19 has made his sentence unexpectedly severe, justifying his release.  This argument is unpersuasive.

A defendant has the burden to prove an extraordinary and compelling reason for release, which in the context of a claim such as McCoy's requires information demonstrating COVID-19 remains a serious problem at the relevant prison.  *See United States v. Star*, Nos. 20-1999, 20-2043, 2022 WL 2165895, at *1 (2d Cir. June 16, 2022) (no abuse of discretion where, *inter alia*,

defendant did not "show that his prison had a significant problem with COVID-19"); *United States v. Robinson*, No. 21 Cr. 1865, 2022 WL 2204126, at *2 (2d Cir. June 21, 2022) (no abuse of discretion where, *inter alia*, defendant "provided no documentation concerning the COVID-19 protocols at his facility and whether they threatened his health and safety"). McCoy has not done so. And in general, with the advent of vaccinations in early 2021 and a reduction of the virulence of the virus, the impact of COVID-19 on federal prisons has diminished substantially since 2020, when McCoy first sought—and was denied by Judge Pauley—compassionate release on account of COVID-19 prison conditions. *See United States v. Galdieri*, No. 19 Cr. 757-2 (JMF), 2022 WL 2118539, at *1 (S.D.N.Y. June 13, 2022) ("[T]he conditions of confinement due to COVID-19 are far better than they were in 2020 or even 2021. . . ."); *see also United States v. Gunn*, No. 06 Cr. 911 (AKH), 2022 WL 2077971, at *5 (S.D.N.Y. June 9, 2022) (describing steps taken to control COVID-19 in federal facility and collecting cases). In any event, even if such conditions were as dire as they were at the height of the pandemic, the Court shares Judge Pauley's assessment that the rigor of McCoy's confinement would not overcome the § 3553(a) factors, which, given the murder he committed, strongly disfavor his early release. *See* 2020 CR Tr. at 18 (noting that while "Mr. McCoy does have medical conditions that increase his risk with respect to COVID-19 . . . [t]hat is just part of the analysis.").

McCoy is, of course, correct that courts have reduced sentences to account for either unexpectedly severe conditions of confinement or grave risks that COVID-19 presented to the inmate. But by the standards set by such precedents, the conditions in which McCoy is being held are not unusually grave. *See, e.g.*, *United States v. Pinto-Thomaz*, 454 F. Supp. 3d 327, 331 (S.D.N.Y. 2020) ("[L]ockdowns are a routine fact of life for incarcerated defendants and are hardly extraordinary."); *United States v. Batista*, No. 18 Cr. 319-7 (LTS), 2022 WL 1997173, at

*4–5 (S.D.N.Y. June 6, 2022) (granting 20-month sentence reduction based on defendant's

having spent 27 months at increased risk due to pandemic, plus adverse conditions in cell

including water leakage, toxic mold and asbestos with consequent medical illnesses, and a roach

infestation); *United States v. Dones*, No. 18 Cr. 246 (JBA), 2021 WL 6063238, at *3–5 (D.

Conn. Dec. 22, 2021) (granting 40-month sentence reduction based on effective solitary

confinement during pandemic and inadequate treatment of medical conditions); *United States v.

Tucker*, No. 13 Cr. 378 (AJN), 2021 WL 3722750, at *2–3 (S.D.N.Y. Aug. 23, 2021) (granting

one-year reduction where defendant had sickle cell disease and other conditions that made him

extremely vulnerable to COVID-19).  And where this Court has released defendants based on

COVID-19, it did so predominantly before vaccines were available, and in the context of

defendants (1) with severe respiratory or other ailments giving them heightened vulnerability to

COVID-19, (2) who had served most or much of the sentence imposed, and (3) whose release

did not pose a danger to the community.[5]  This combination of factors is not present in McCoy's

---

[5] *See, e.g.*, *United States v. Phillibert*, 557 F. Supp. 3d 456, 462 (S.D.N.Y. 2021) (ordering
compassionate release into home confinement of defendant who was obese, a former smoker,
had not been provided with the use of his inhaler despite suffering from Chronic Obstructive
Pulmonary Disease, contracted COVID-19 in prison, and who had served approximately 90% of
sentence); *United States v. Ciprian*, No. 11 Cr. 1032-74 (PAE), Dkt. 2581 at 2, 7–9 S.D.N.Y.
Feb. 1, 2021) (ordering compassionate release of defendant who had COVID-19 and served over
90% of sentence, and Government conceded that there were extraordinary and compelling
reasons for release); *United States v. Mcrae*, No. 17 Cr. 643 (PAE), 2021 WL 142277, at *2, *5–
6 (S.D.N.Y, Jan. 15, 2021) (ordering compassionate release of defendant who suffered from
obesity, hypertension, prediabetes, and hepatitis C, had served 70% of his sentence, was a non-
violent drug dealer, and Government conceded that there were extraordinary and compelling
reasons for release); *United States v. Benjamin*, No. 15 Cr. 445-15 (PAE), Dkt. 1144 at 6–7
(S.D.N.Y. Sept. 15, 2020) (ordering compassionate release of defendant who had asthma and had
served nine years of his approximately 10-year sentence); *United States v. Wilson*, 16 Cr. 317-17
(PAE), Dkt. 656 at 4–7 (S.D.N.Y, Aug. 31, 2020) (ordering compassionate release of defendant
with heightened vulnerability who had served the substantial majority of his sentence and played
a low-level role in a drug trafficking conspiracy); *United States v. Simon*, 18 Cr. 390-15 (PAE),
Dkt. 507, at 5–9 (S.D.N.Y. Aug. 27, 2020) (ordering compassionate release of elderly defendant

case. And, for the reasons reviewed *infra*, the § 3553(a) factors would, in any event, warrant denial.

### 2.    Cumulative Sentence for a Lesser-Included Offense

McCoy next argues that the firearms charge in Count Four under 18 U.S.C. §924(c) was a lesser included offense of the firearms charge in Count Three under 18 U.S.C. §924(j), and that his cumulative sentences for the two violated his Fifth Amendment right against double jeopardy. Def. Mot. at 2–3; *Brown v. Ohio*, 432 U.S. 161, 169 (1977) ("The Fifth Amendment forbids . . . cumulative punishment for a greater and lesser included offense.").

The Second Circuit employs the test set out in *Blockburger v. United States*, 284 U.S. 299 (1932), to determine whether one offense is a lesser included offense of another. *See Aparicio v. Artuz*, 269 F.3d 78, 97 (2d Cir. 2001). The Court first asks whether the offenses are the "same in law"—whether they are based on the same elements—and next considers whether they are the "same in fact." *See United States v. Rodriguez*, No. 19 Cr. 779 (AKH), 2020 WL 5819503, at *5 (S.D.N.Y. Sept. 30, 2020). To decide whether the offenses are the "same in fact," courts consider "whether a reasonable person familiar with the totality of the facts and circumstances would construe" the substantive conduct at issue to include the substantive conduct charged in the lesser included offense. *United States v. Basciano*, 599 F.3d 184, 197 (2d Cir. 2010) (cleaned up). This review is "guided by a burden-shifting framework that requires the

---

who had served over half his sentence, suffered from, *inter alia*, HIV, cancer, and hypertension, and played a low-level role in a drug trafficking conspiracy); *United States v. Davies*, No, 18 Cr. 390-13 (PAE), Dkt. 479 at 4–7 (S.D.N.Y. June 26, 2020) (ordering compassionate release of elderly defendant, who had serious medical conditions and played low-level role in drug trafficking conspiracy); *United States v. Brown*, No. 18 Cr. 390-14 (PAE), Dkt. 472 at 4–7 (S.D.N.Y. June 17, 2020) (same); *United States v. Knox*, No. 15 Cr. 445-12 (PAE), Dkts. 1084, 1088 at 2–4 (S.D.N.Y. Apr. 10, 2020) (same for defendant who had served all but seven months of an 88-month sentence); *United States v. Jasper*, No. 18 Cr. 390 (PAE), Dkt. 441 at 2–4 (S.D.N.Y. Apr. 6, 2020) (ordering compassionate release of defendant with an immune-inflammatory disease who had served all but 34 days of a four-month sentence).

defendant, in the first instance, to make a colorable showing that the crimes are the same, whereupon the government is required to demonstrate by a preponderance of the evidence that a person familiar with the totality of the facts and circumstances would *not*, in fact construe" the lesser-included offense to be covered by the greater.  *Id.* (cleaned up).

McCoy's argument fails for two reasons.

First, although a § 924(c) offense can be a lesser included offense of § 924(j) offense, *see Rodriguez*, 2020 WL 5819503, at *7 (collecting cases), that is not the case here, because the offenses underlying Counts Three and Four were not the same in fact.  Count Three charged McCoy with murder in the course of using and carrying a firearm, in connection with Henry's murder in February 2000.  Indictment ¶ 5; PSR ¶ 4.  Count Four charged McCoy with the use, carrying and discharge of various firearms, in connection with a drug trafficking offense, to wit, the narcotics conspiracy charged in Count One that spanned 1998 and March 2000 and was committed in the Southern District of New York and the Eastern District of Virginia.  Indictment ¶ 6; PSR ¶ 5.  These counts relate to different firearms activity—one involving the carrying, use, and discharge of a gun at a particular point in time to commit a murder, another involving the carrying, use, and discharge of multiple guns over a two-year period in the course of a narcotics conspiracy.  A reasonable person would not construe the broader Count Four (whose object was the facilitation of a long-running drug conspiracy) to subsume Count Three (whose object was the facilitation of a substantive offense, murder).  And the Superseding Indictment did not charge, and the prosecution did not argue at trial, that Count Four could be established were the conduct underlying Count Three found.  *See, e.g.*, *United States v. Mejia*, 545 F.3d 179, 205–06 (2d Cir. 2008) (two drive-by shootings of three victims were distinct crimes, because, "[a]lthough those separate shootings are clustered in time and space, that clustering does not

somehow merge them into one predicate crime"; "the existence of a single conspiracy connecting the . . . assaults does not preclude treating them as separate predicate offenses"); *Rodriguez*, 2020 WL 5819503, at *7–8 (even assuming *arguendo* that § 924(c) is the "same in law" as § 924(j), a temporal overlap between underlying conduct is insufficient to establish that two offenses are the "same in fact" and included offenses). Counts Three was thus not a lesser-included offense within Count Four.

Second, even if Count Three had been a lesser-included offense within Count Four, such error was demonstrably harmless, given the sentence imposed by Judge Jones and her analysis at McCoy's re-sentencing. *See* Opp. at 5. In imposing a below-Guidelines sentence, Judge Jones stated that the § 3553(a) factors, as informed by the nature of McCoy's crimes, would not permit an overall sentence below 33 years imprisonment. First Step Act Mot. at 46 ("I am still content with a sentence that . . . is roughly 33 years . . . I would not be happy with a sentence lower."). It is therefore clear that, had Jones sentenced McCoy on Counts One, Two and Four only, he would have received the same aggregate sentence. *See, e.g., United States v. Hornick*, 963 F.2d 546, 547 (2d Cir. 1992) (per curiam) (upholding resentencing of defendant to same sentence allocated differently across counts; "[t]he original sentence was thus a reflection of the district court's assessment of the aggregate gravity of [his] crimes, not a sum arrived at through discrete consideration of distinct crimes"); *United States v. Gelb*, 944 F.2d 52, 59 (2d Cir. 1991); *see also United States v. Chaklader*, 232 F.3d 343, 346–47 (2d Cir. 2000) (collecting cases). Such is, in fact, confirmed by the construct of the sentences imposed. Judge Jones imposed concurrent sentences on Counts One through Three (of 276 months imprisonment). Thus, even if McCoy's sentence on Count Three were disregarded as subsumed within Count Four (on which he

received a mandatory consecutive 120-month sentence), his overall sentence would have been the same.

### 3.      First Step Act

McCoy makes two arguments based on the First Step Act, one involving the mandatory minimum sentence, the other involving sentence stacking.

#### a.      *Mandatory minimum sentence*

McCoy argues that his sentence be reduced under the First Step Act, to achieve the goals of the 2010 Fair Sentencing Act. First Step Mot. at 1–6. The Fair Sentencing Act increased, from 50 grams to 280 grams, the drug quantity of crack cocaine required in narcotics conspiracy cases to trigger a 10-year mandatory minimum sentence. Pub. L. No. 111-220, §§ 2–3, 124 Stat. 2372, 2372 (amending 21 U.S.C. § 841(b)(1)). Although this change did not apply retroactively, in 2018, Congress enacted § 404(b) of the First Step Act, which allows a sentencing court on motion—including from a defendant—to resentence the defendant under the new sentencing rules for "covered offenses."

This argument fails as a basis for resentencing, for multiple reasons. First, as alleged, McCoy participated in a narcotics conspiracy that distributed more than 1.5 kilograms of crack cocaine. PSR at 24. McCoy does not offer any factual basis on which to conclude that, had the jury been instructed that the minimum drug quantity to support a conviction on Count One was 280 grams as opposed to 50 grams, it would have returned a different verdict.

Second, Judge Jones did not rely on the 10-year mandatory minimum in fashioning her sentence on the narcotics conspiracy count, Count One. Rather, as explained above, she found that an aggregate sentence of 33 years imprisonment was that minimum compatible with the § 3553(a) factors, and accordingly imposed a 23-year sentence on each of counts One through Three, running concurrently, followed by the 10-year mandatory consecutive sentence on Count

14

Four. *See* Sent. Tr. at 11 (stating that she intended that McCoy be "nearly 60 years old" at the time of his release).

Third, McCoy is not entitled to the relief he seeks because authority to apply the Fair Sentencing Act retroactively is discretionary. *See* First Step Act § 404(c) ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section."); *United States v. Davis*, 961 F.3d 181, 185 (2d Cir. 2020) ("Section 404 authorizes district courts to make a discretionary decision about whether and how to reduce a defendant's sentence."). The Court here, heeding Judge Jones's and later Judge Pauley's considered analyses of the just sentence in light of the § 3553(a) factors as applied to McCoy's gruesome and heartless offense, would not exercise its discretion to reduce that sentence. *See* Sent. Tr. at 11 ("[T]here is no sentence in this case less than 35 years which will actually produce the results that I want . . . ."); First Step Mot. at 46 (Judge Pauly stating, "I think I am still content with a sentence that presumably is roughly 33 years instead of 35 years.  I would not be happy with a sentence lower," and declining to "give [McCoy] credit for the full 47 months [of time served]"); 2020 CR Tr. at 19 ("Judge Jones evaluated Mr. McCoy and determined that life in prison would not be an appropriate sentence in this case, but she wanted to ensure that it was a sentence that would produce the result that she wanted . . . . [G]ranting compassionate release would not satisfy the needs that Judge Jones saw when she originally imposed the sentence.").

> b.    *Sentence stacking*

McCoy next argues that the First Step Act's anti-stacking provisions warrant his release. Section 403(a) of the First Step Act "eliminated the provision requiring 'stacking' of mandatory minimum sentences for multiple convictions under 18 U.S.C. § 924(c) in a single prosecution." *United States v. Ballard*, 552 F. Supp. 3d 461, 466 (S.D.N.Y. 2021).

There is a split of authority on whether the FSA's change in law, by itself, constitutes an "extraordinary and compelling" circumstance under § 3582(c)(1)(A) justifying reducing a pre-FSA sentence of an offender convicted of a crime which had its mandatory minimum sentence reduced by the FSA. Some courts have held that such is not enough.[6]  Others have held that the FSA's change of law alone justifies relief under § 3582.[7]  Notwithstanding this debate, courts have widely recognized that the First Step Act's change of law, where combined with other "extraordinary and compelling" reasons, can constitute sufficient grounds to justify a sentence reduction under § 3582.[8]  This Court has so held, finding that, when other factors support a

---

[6] *See, e.g., United States v. Lorenzano*, 03 Cr. 1256 (JFK), 2021 WL 734984, at *3 (S.D.N.Y. Feb. 24, 2021) ("Accordingly, the Court cannot conclude that, standing alone, Congress's recent amendment to § 924(c) constitutes an extraordinary and compelling reason for a reduction to Lorenzano's sentence."); *Musa v. United States*, 502 F. Supp. 3d 803, 812 (S.D.N.Y. 2020) ("[T]his change in the law is not enough, standing alone, to automatically merit Musa's release. . . . [T]he Court concludes that the recent changes in the law support Musa's application, but that discretionary relief is not warranted because Musa has failed to identify additional, individualized factors justifying his release."); *United States v. Thacker*, 4 F.4th 569, 573–76 (7th Cir. 2021) ("[T]he discretionary authority conferred by § 3584(c)(1)(A) only goes so far.  It cannot be used to effect a sentencing reduction at odds with Congress's express determination in . . . the First Step Act that the amendment to § 924(c)'s sentencing structure apply only prospectively."); *United States v. Jarvis*, 999 F.3d 442, 443–44 (6th Cir. 2021) (affirming district court finding that "the First Step Act's non-retroactive change to § 924(c) could not as a matter of law be an 'extraordinary and compelling' reason under § 3582(c)(1)(A)(i)").

[7] *See, e.g., Ballard*, 552 F. Supp. 3d at 466 ("The Court therefore holds that the First Step Act's dramatic amendment to section 924(c) constitutes an extraordinary and compelling reason warranting a reduction of Ballard's sentence."); *United States v. Owens*, 996 F.3d 755, 762–63 (6th Cir. 2021) ("[A] defendant's excessive sentence because of mandatory-minimum sentences since mitigated by the First Step Act may, alongside other factors, justify compassionate release.") (collecting cases); *United States v. Redd*, 444 F. Supp. 3d 717, 722–24 (E.D. Va. 2020) ("Congress [has concluded] that [§ 924(c) stacking] sentences . . . are unfair and unnecessary," and, as a result, are "extraordinary and compelling reasons that warrant a reduction to Mr. Redd's sentence of incarceration.").

[8] *See, e.g., United States v. McCoy*, 981 F.3d 271, 285–86 (4th Cir. 2020) ("[T]he severity of a § 924(c) sentence, combined with the enormous disparity between that sentence and the sentence a defendant would receive today, can constitute an 'extraordinary and compelling' reason for relief

sentence reduction, Congress's current view embodied in the FSA of the proper treatment at

sentencing of cases involving multiple firearms counts carrying mandatory minimum sentences

may also be considered in the § 3582 equation. *See United States v. Robles*, 553 F. Supp. 3d

172, 179 (S.D.N.Y. 2021); *United States v. Wright*, No. 15 Cr. 445-3 (PAE), 2022 WL 134870,

at *3 (S.D.N.Y. Jan. 13, 2022)

      In this case, however, applying the First Step Act's anti-stacking provision would not

have assisted McCoy.[9] As explained, in imposing a sentence on Counts One through Three,

Judge Jones did not rely on or impose mandatory minimum sentences. Instead, she imposed

concurrent 23-year sentences on each of these counts, to achieve an overall sentence of 33 years

imprisonment once the mandatory 10-year consecutive sentence on Count Four was taken into

---

under § 3582(c)(1)(A). . . . . The fact that Congress chose not to make § 403 of the First Step Act
categorically retroactive does not mean that courts may not consider that legislative change in
conducting their individualized reviews of motions for compassionate release.") (collecting
cases); *United States v. Haynes*, 456 F. Supp. 3d 496, 514–16 (E.D.N.Y. 2020) ("drastic"
disparity between defendant and co-defendant's sentence and "the Congressional decision to
outlaw the very weapon prosecutors used to punish Haynes with 30 additional years in prison for
electing to go to trial . . . [were] . . . 'extraordinary and compelling' circumstance[s]," especially
because defendant had three pre-amendment § 924(c) convictions, two of which were added only
after he rejected a plea); *United States v. McDonel*, 513 F. Supp. 3d 752, 756–57 (E.D. Mich.
2021) ("McDonel is eligible for compassionate release because of his harsh sentence—which
would not be imposed under the law today—together with his youth and record of
rehabilitation."), *appeal dismissed*, No. 21-1152, 2021 WL 6932362 (6th Cir. Sept. 13, 2021);
*United States v. Pitts*, 94 Cr. 70068, 2020 WL 1676365, at *7 (W.D. Va. Apr. 6, 2020)
("Congress did not intend the sentencing disparity between defendants sentenced before and after
the § 924(c) amendment to constitute a sufficient basis on its own to grant the reduction Pitts
seeks. Instead, that factor is only one of many that the court should consider, as set forth in
§ 3553(a)."), *aff'd*, 829 F. App'x 597 (4th Cir. 2020) (summary order).

[9] McCoy was not charged with multiple violations of § 924(c). Rather, McCoy was charged with
violating § 924(c) and § 924(j). But, as the Second Circuit has held, "because of the inclusion of
the § 924(c) language in § 924(j), to prove a violation of § 924(j), the government must prove
that a defendant also committed a violation of § 924(c). Accordingly, a defendant who violates
§ 924(j) by definition violates § 924(c)," such that a consecutive sentence for a conviction under
§ 924(j) is mandatory. *United States v. Nina*, 734 F. App'x 27, 36 (2d Cir. 2018) (summary
order) (cleaned up).

account.  There was thus no stacking of consecutive sentences here.  And Judge Jones's analysis makes the record certain that, however the sentence was allocated among counts, she would have exercised her sentencing authority to achieve a 33-year aggregate sentence.  *See* Sent. Tr. at 11–13; *Wright*, 2022 WL 134870, at *4 ("[T]o the extent that Wright invokes the [FSA's] abandonment of stacking multiple firearms sentences, Wright's sentences would not have been any lower under the current sentencing regime. . . . [E]ven if the Court had sentenced Wright on the two firearms counts with the greater flexibility afforded by the [FSA], the Court would not have imposed a lower sentence."); *United States v. Fuller*, 09 Cr. 274-03 (CS), 2020 WL 5849442, at *2 (S.D.N.Y. 2020) (no extraordinary and compelling reason where defendant would have had lower mandatory minimum but would likely have received a functionally identical sentence); *United States v. Daidone*, No. 02 Cr. 1584 (RMB), 2022 WL 443778, at *3 (S.D.N.Y. Feb. 14, 2022) (where Guidelines and § 3553(a) factors would support sentence, a change in the law underlying one count would not have been considered relevant).

### 4.    Second Degree Murder Argument

McCoy next argues that were he sentenced today, he would have been sentenced based on the penalties for second degree, rather than first degree, murder.  For this point, he relies on *United States v. Guerrero*, 52 F. Supp. 3d 643 (S.D.N.Y. 2014), in which Judge Sweet used the Guidelines for second-degree murder because the jury had not been given an instruction requiring it to find premeditation, which McCoy contends is required for use of the first-degree murder guideline.  *Id.* at 652.

This argument fails.  First, McCoy was convicted of first-degree murder under 21 U.S.C. § 848(e)(1)(A).  That conviction made him subject to § 2A1.1 of the Guidelines—applicable to first-degree murder—and the base offense level of 43 that Judge Jones applied.  *United States v. Maldonado*, No. 09 Cr. 339-02 (RWS), 2012 WL 5878673, at *7 (S.D.N.Y. Nov. 21, 2012)

18

("The guideline for a violation of 21 U.S.C. § 848(e)(1)(A) is found in § 2A1.1(a)."); *United States v. Padilla*, No. 09 Cr. 853-01 (RWS), 2011 WL 1311843, at *6 (S.D.N.Y. Apr. 1, 2011) (same).

Judge Jones reached that same conclusion after careful deliberation on this point. On October 10, 2006, at the start of McCoy's sentencing hearing, his counsel argued that because the Court in instructing on Count Three had not instructed on premeditation, McCoy's Guideline range should be set by § 2A1.2 of the Guidelines, governing second-degree murder. First Step Act Mot. at 13, 15–16. Judge Jones adjourned the sentencing and directed the parties to submit letters on the issue. *Id.* at 17. On October 20, 2006, Judge Jones reconvened the sentencing, and held that § 2A1.1 applied:

> The commentary to 2A1.1 specifically states that 2A1.1 applies when determining a base offense level for convictions under 21 U.S.C. 848(e) . . . . Premeditation is not required in order to apply 2A1.1 and the Second Circuit has upheld the application of 2A1.1 in cases where the underlying state charge did not require a premeditation element.

Sent. Tr. at 2–3; *see also United States v. Lopez*, 250 F. App'x 381, 383 (2d Cir. 2007) (summary order); *United States v. Minicone*, 960 F.2d 1099, 1110 (2d Cir. 1992); *United States v. Berry*, No. 20 Cr. 84 (AJN), 2022 WL 1515397, at *10 (S.D.N.Y. May 13, 2022). McCoy does not cite contrary authority or any basis to reassess this aspect of his sentencing.

### 5.    *Holloway* Relief

McCoy's final argument is that he is entitled to relief based on *United States v. Holloway*, *supra*. Def. Mot. at 3–4. There, then-Judge Gleeson applauded a post-conviction, post-appeal, discretionary decision by the United States Attorney's Office ("USAO") for the Eastern District, at the judge's request, to drop two of three stacked § 924(c) counts, based on mitigating factors including the contemporary views of victims and Holloway's progress while incarcerated. 68 F. Supp. 3d at 314–15. *Holloway* is inapposite. There are no stacked § 924(c) counts in McCoy's

case; the Government here has not moved to drop any count of conviction; the combination of

factors that led Judge Gleeson to ask the USAO to drop the counts in *Holloway* are not present

here; and this Court, having reviewed the record, has not asked and is not asking the Government

to do so. And *Holloway* does not afford a defendant any right to relief. *See Musa*, 502 F. Supp.

3d at 817; *United States v. Erskine*, 05 Cr. 1234-01 (DC), 2017 WL 10751237, at *1 (S.D.N.Y.

2017) (collecting cases).

### 6.    Assessment of § 3553(a) Factors

Even assuming McCoy had identified personal circumstances (*e.g.*, hardships arising

from COVID-19) that could present an extraordinary and compelling basis for release, the Court

would still deny his request for release or a reduction of sentence. That is because the assembled

§ 3553(a) factors, viewed in totality, demand that he serve his full prison term.

For the reasons articulated by Judge Jones at sentencing and by Judge Pauley in denying

McCoy's initial petition for compassionate release, which the Court adopts in full, McCoy's 33-

month sentence was the lowest consistent with the factors, considered in totality.[10] McCoy's

crime was horrific. As Judge Jones explained, he committed "a cold-blooded murder of a 21-

year-old man. [McCoy] shot Jason Henry in the head two times and then participated in

disposing of the body in a garbage can along the highway." Sent. Tr. at 10. Judge Pauley

termed McCoy's conduct "heinous and frightening." 2020 CR Tr. at 19. McCoy also showed a

"complete lack of appreciation for the worth of human life," inconsistent with "a light sentence."

---

[10] These include "the nature and circumstances of the offense," and "the need for the sentence
imposed to reflect the seriousness of the offense, to promote respect for the law . . . to provide
just punishment for the offense . . . to afford adequate deterrence to criminal conduct . . . to
protect the public from further crimes of the defendant," and "to provide the defendant with
needed educational or vocational training, medical care, or other correctional treatment in the
most effective manner." 18 U.S.C. § 3553(a) (cleaned up).

Sent. Tr. at 10. Judge Jones stated that the 33-year sentence was necessary to achieve "respect for the law, punishment for the offense, deterrence, protect[ion of] the public, and . . . [to] avoid[]. . . disparities." *Id.* at 12. Judge Pauley added that McCoy "continues to pose a danger to the community" and that releasing him would undermine the interests in specific and general deterrence. 2020 CR Tr. at 19 ("a crime of this nature is just about as severe as it could possible get"), 20.

Notably, in imposing sentence, Judge Jones varied downward from the life sentence recommended by the Guidelines, mindful of various mitigating factors the defense had identified.[11] She took into account the lower sentence imposed on co-defendant Williams, while noting that his crimes were less severe. Sent. Tr. at 10 ("I have taken into account the fact that Mr. McCoy was not the leader of the drug organization . . . and that in fact his co-defendant, Larry Williams, in my estimate from the evidence was the instigator of the murder of Jason Henry.").

McCoy's arguments in his petition, to the extent directed to the § 3553(a) factors, are easily put aside. He again notes that Williams received a lower sentence. Amend. Def. Mot. at 1–2. But although unwarranted sentence disparities can justify relief under § 3582, *see Robles*, 553 F. Supp. 3d at 180; *United States v. Hester*, 664 F. App'x 73, 75–76 (2d Cir. 2016) (summary order), here, as noted, Judge Jones cogently explained that McCoy's higher sentence was warranted, particularly given his serious criminal conduct. And Judge Pauley, too, rejected this argument in rejecting McCoy's first motion for compassionate release. As both judges

---

[11] These included McCoy's difficult upbringing. Sent. Tr. at 10 ("I am taking into consideration that this defendant was the product of parents who abused drugs, a father who was incarcerated when he was 12 years old."). The downward variance and the prospect of good time credit were also intended, she stated, to incent McCoy to rehabilitate and learn a trade while in prison. *Id.* at 11.

noted, McCoy was found guilty of murder, and Williams was not. *See* 2020 CR Tr. at 19

("[Williams] did not kill another human being."). Also tending to refute McCoy's claim of an

unjustified disparity, McCoy's sentence reflected a substantial downward variance, whereas

Williams received the maximum sentence statutorily available—a point noted by Judge Pauley.

*See id.* An explicit reason that Judge Jones gave for the downward variance, in fact, was to

avoid unnecessary disparities between the co-defendants. *See* Sent. Tr. at 10. McCoy's

argument that sentencing disparities require a reduction of sentence is unpersuasive. *See, e.g.*,

*Robinson*, 2022 WL 2204126, at *3.

Second, McCoy notes that he has family ties—a wife and two grandchildren—although

he does not claim that his presence is necessary for their care. Def. Mot. at 5; First Step Mot. at

4; Reply at 8. Given the seriousness of McCoy's crimes, his family ties do not warrant a further

downward variance. *Cf. United States v. Vaughn*, No. 21 Cr. 1984, 2022 WL 2203857, at *1 (2d

Cir. June 21, 2022) (where defendant was convicted of arson and a firearms-related offense, his

good behavior and the support he would receive from his spouse on release did not overcome the

severity of his conduct); *United States v. Alvarez*, No. 89 Cr. 0229 (JS), 2020 WL 4904586, at *3

(E.D.N.Y. Aug. 20, 2020) ("[C]ompassionate release is generally limited to cases of serious

illness or impairment, advanced age, or a need to care for a child, spouse, or registered

partner . . . ."); *United States v. Snype*, No. 02 Cr. 939-3 (DC), 2021 WL 1178238, at *3

(S.D.N.Y. Mar. 29, 2021) (denying compassionate release where defendant was not only person

available to care for his partner); *United States v. Myrick*, No. 12 Cr. 385 (ARR), 2020 WL

6128943, at *4–5 (E.D.N.Y. Oct. 19, 2020) (denying compassionate release despite caretaking

burdens on grandmother tasked with attending to defendant's two children with special needs;

court notes seriousness of defendant's murder conviction).

Finally, McCoy argues that he has exhibited good behavior in prison, including taking classes and maintaining a generally good disciplinary record. Def. Mot. at 5–6; Amend. Def. Mot. at 2; First Step Mot. at 5. This is commendable. It is also expected and not unusual. And Judge Jones at sentencing stated her expectation that McCoy would maintain good behavior. Sent. Tr. at 12; *see United States v. Seshan*, 850 F. App'x 800, 802 (2d Cir. 2021) (summary order). This factor does not come close to outweighing the hefty § 3553(a) factors favoring a long period of incarceration consistent with that imposed by Judge Jones and effectively reaffirmed by Judge Pauley. *See United States v. Garcia*, No. 09 Cr. 330 (KAM), 2021 WL 1616914, at *5 (E.D.N.Y. Apr. 26, 2021) (rehabilitative steps not sufficient to justify compassionate release, given defendant's serious crime, money laundering), *aff'd*, No. 21 Cr. 1181, 2022 WL 2154675 (2d Cir. June 15, 2022); *United States v. Bailey*, No. 97 Cr. 269 (DLC), 2021 WL 4942954, at *2 (S.D.N.Y. Oct. 22, 2021) (rehabilitation insufficient to justify release, given defendant's violent crime); *United States v. Shakur*, 498 F. Supp. 3d 490, 499–500 (S.D.N.Y. 2020) (compassionate release denied, notwithstanding defendant's cancer, due to seriousness of murder offense); *United States v. Jaquez*, No. 17 Cr. 415 (PAC), 2021 WL 857364, at *3–5 (S.D.N.Y. Mar. 8, 2021) (compassionate release denied where otherwise strong bases for release were outweighed by seriousness of underlying murder offense).

Accordingly, finding that the § 3553(a) factors support maintenance of the sentence imposed by Judge Jones, the Court denies McCoy's motions for compassionate release.[12]

---

[12] For the same reasons, the Court denies McCoy's request that the Court reduce his sentence to home confinement. Amend. Def. Mot. at 2. In any event, that remedy is "'exclusively within the discretion of the BOP; the Court lacks authority to order' home confinement." *United States v. Ayala*, No. 17 Cr. 618 (RA), 2020 WL 3893543, at *1 (S.D.N.Y. July 10, 2020) (quoting *United States v. Ogarro*, No. 18 Cr. 373-9 (RJS), 2020 WL 1876300, at *6 (S.D.N.Y. Apr. 14, 2020)).

**CONCLUSION**

For the reasons above, the Court denies McCoy's motions for compassionate release or for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

The Clerk of the Court is respectfully directed to close the motions pending at docket entries 559, 568, 570, 576, and 588.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: July 27, 2022
       New York, New York